# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

SHEILA MARIE JAMES, )
 )
       Plaintiff, )
 )
v. ) Case No. CIV-15-241-SPS
 )
CAROLYN COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
 )
       Defendant. )

## OPINION AND ORDER

The claimant Sheila Marie James requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born May 17, 1967, and was forty-seven years old at the time of the administrative hearing (Tr. 37). She completed the eighth grade while taking special education classes, and has worked as a housekeeping cleaner and cashier II (Tr. 68, 292). The claimant alleges that she has been unable to work since October 2, 2005, due to neuropathy in her feet, diabetes, high blood pressure, asthma, depression, and anxiety (Tr. 291).

## Procedural History

On May 31, 2013, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 16, 2015 (Tr. 12-26). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a range of light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk and sit for six hours each in an eight-hour workday, but that she could never climb ladders, ropes, or scaffolds; only occasionally balance; and that she could frequently climb ramps and stairs, stoop, kneel, crouch, and crawl. Additionally, he limited her to unskilled work (work which needs

little or no judgment to do simple duties that can be learned on the job in a short period of time), but she could only occasionally be required to understand, remember, and complete detailed instructions because she has a marked limitation in that area. Furthermore, he found that her supervision must be simple, direct, and concrete; that interpersonal contact with supervisors and coworkers must be incidental to the work performed, *e. g.*, assembly work, but that she must not be require to work at fast-paced production-line speeds due to problems with concentration, persistence, and pace; and that she should have no contact with the general public (Tr. 19-20). The ALJ thus concluded that the claimant was not disabled because she could return to her past relevant work as a housekeeping cleaner (Tr. 24). Alternatively, the ALJ determined that there was work the claimant could perform in the economy, such as the jobs of small product assembler and inspector packer (Tr. 25).

## Review

The claimant contends that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to properly evaluate her credibility. The Court finds this contention unpersuasive.

The ALJ found that the claimant had the severe impairments of diabetes, obesity, affective disorder, anxiety, and a substance abuse disorder (Tr. 14). Additionally, he determined that the clamant had the nonsevere impairments of asthma, hyperlipidemia, hypertension, headaches, and diabetic neuropathy in the left leg and hands (Tr. 15). Relevant medical evidence reveals that the claimant was hospitalized (prior to the alleged onset date) at Vista Health in Fort Smith, Arkansas, from February 25, 2013 to March 4,

2013 for homicidal ideations, auditory hallucinations, and visual hallucinations (Tr. 444). Upon discharge, she was diagnosed with PTSD and major depressive disorder, severe, recurrent, without psychotic features, and that she had borderline traits (Tr. 444). On July 30, 2013, the claimant reported that she had stopped taking her medication because family members were "pill poppers," but she was restarted on medications and assessed as a low imminent risk of danger to herself or others at that time (Tr. 486-488).

A state reviewing physician found that the claimant was markedly limited in the three typical areas of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 143-144).

During and also subsequent to the administrative hearing, the claimant's representative requested that she be sent for a consultative examination regarding her pulmonary function, which the ALJ did (Tr. 15-16, 556-558). The claimant did not request a mental status evaluation from a consultative examiner, and the ALJ did not send the claimant out for one.

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical records. As relevant to this appeal, the ALJ used the typical uninformative boilerplate to find the claimant not credible, but continued with his analysis by stating: (i) that there was little evidence in the record that the claimant had worsened since a November 2012 ALJ decision regarding a previous application, (ii) she received sporadic treatment which often noted medical noncompliance (including failing to check blood glucose levels and not adhering to recommended diet), (iii) her minimal work history, (iv) her allegation that she did very little housework in contrast with

statements that she moved into her mother's home to care for her mother, and (v) her history of illicit drug and alcohol use and her inconsistent statements regarding how many times she had used drugs (Tr. 20-23). He then concluded that the claimant was not disabled.

The ALJ did recite in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 313). Although boilerplate language is disfavored, it "is problematic only when it appears in the absence of a more thorough analysis.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012), *quoting Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004). Here, the ALJ *also* set out the appropriate credibility factors, and cited evidence as outlined above supporting his reasons for finding that the claimant's subjective complaints were not credible, including those stated above. The Court therefore concludes that the ALJ gave clear and specific reasons that were linked to the evidence in the record for his credibility assessment.

The claimant nevertheless argues that the ALJ erred in evaluating her credibility, specifically that he: (i) failed to credit her for her consistent statements; (ii) criticized her for not seeking mental health treatment until January 2013; (iii) improperly discredited her for failure to comply with her medication treatment; (iv) improperly relied on her poor work history, drug and alcohol use, and criminal history; and (v) improperly remarked on her improvement during inpatient treatment. Deference *is* generally given to an ALJ's credibility determination, unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias*, 933 F.2d at 801. In assessing a

claimant's complaints of pain, an ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The claimant argues in part that the ALJ improperly discredited her noncompliance with medications, and that he failed to acknowledge that such noncompliance can arise from the mental illness itself. *See Pate-Fires v. Astrue*, 564 F.3d 935, 945-946 (8th Cir. 2009) ("[T]he ALJ failed to make the critical distinction between Pate-Fires's awareness of the need to take her medication and the question whether he noncompliance with her medication was a medically-determinable symptom of her mental illness. . . . [T]he evidence overwhelmingly demonstrates that Pate-Fires's noncompliance was attributable to her mental illness."). Here, the evidence in the record reflects that the claimant was noncompliant with her hypertension medication and diabetes medication, as well as medications for mental impairments. However, the claimant has cited to no mental health treatment records suggestive of a finding that the claimant's mental impairments have caused her noncompliance, instead asserting that because other courts have found it to be true, that finding must apply here. In fact, the claimant herself testified that she stopped taking her medications after her hospitalization

in order to keep them out of the hands of family members. The ALJ was also permitted, as he did in this case, to make a finding as to inconsistencies between the claimant's statements of hallucinations and mental status evaluations that found the claimant to be within normal limits (Tr. 23). The claimant has thus failed to cite to any evidence in the record to contradict the ALJ's findings and the ALJ properly discounted her credibility using this as one of his supporting reasons. *See Adams v. Colvin*, 553 Fed. Appx. 811, 816 (10th Cir. 2014) ("Here, in contrast, Adams fails to city to any evidence that his use of alcohol and marijuana and his intermittent pursuit of mental-health treatment were the result of his mental illnesses. Additionally, unlike the ALJ in *Pate-Fires*, the ALJ in Adams's case [properly] discounted his credibility because his testimony conflicted with medical records."). *See also Archer v. Colvin*, 2016 WL 4926170, at *3 (D. Utah Sept. 15, 2016) ("In the absence of evidence that Plaintiff's mental impairments were the reason for her medication noncompliance, the Court concludes that the ALJ reasonably found Plaintiff's lack of compliance probative of her claimed disability."), *citing Adams*, 553 Fed. Appx. at 815-816.

The claimant further contends that her improvement in mental health while at Vista Health inpatient treatment did not demonstrate she could work after leaving such an environment. But this argument, and the case law cited by the claimant, applies in cases where the ALJ has found that drug use is material to a finding of disability, and thus is not applicable here. *See Salazar v. Barnhart*, 468 F.3d 615, 625 (10th Cir. 2006). *See also* Soc. Sec. Rul. 13-2p, 2013 WL 621536, at *12-13 (Feb. 20, 2013).

The claimant's remaining arguments are essentially asking the Court the reweigh the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") *citing Casias*, 933 F.3d at 800. But here, "the ALJ provided specific reasons for his credibility determination on the testimony of the claimant . . . about the severity of [her] impairments. Those reasons complement the framework set forth in *Luna* and are not inconsistent with the case law regarding credibility determinations." *Dellinger v. Barnhart*, 298 F. Supp. 2d 1130, 1138 (D. Kan. 2003).

The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*, and further applied the *Luna* factors to account for her pain. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 28th day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**